Case number 20-5123 et al. Sault Ste. Marie Tribe of Chippewa Indians v. Debra A. Haaland in her official capacity as Secretary of the Interior and United States Department of the Interior at Balance, Saginaw Chippewa Indian Tribe of Michigan et al. Ms. Krantz for the Federal of Balance, Mr. Shaw for the Non-Federal of Balance, Ms. Pinelli for the Appellee. Ms. Krantz, good morning. And before you begin, since we are here unexpectedly, let me ask on behalf of my colleagues how your child is. She's just fine. And thank you so much for accommodating my last second request based on that emergency. I really deeply appreciate it. Well, and Mr. Shaw, I want to thank you on behalf of my colleagues, too, for being immediately willing to interrupt your vacation. I don't know where you are, but thank you. No problem, Your Honor. Okay. Ms. Krantz? Sure. Good morning. Erica Krantz for the Federal Defendants in this case. At the urging of the Sault Ste. Marie Tribe of Chippewa Indians, the District Court has interpreted Section 108 of the Michigan Indian Land Claims Settlement Act in two unprecedented ways. First, the Court read Section 108C to effectively allow any purchase of lands to qualify as a so-called enhancement of tribal lands, an interpretation that stretches the term enhancement far beyond its normal meaning, and that effectively eviscerates the apparent intent of Congress to provide a limit on the tribe's ability to acquire new trust lands. Second, the Court has interpreted Section 108F as requiring the Department of the Interior to rubber stamp the tribe's request for lands to be taken into trust, regardless whether those lands were lawfully purchased. Both rulings by the District Court run counter to the most context. The interpretation proffered by the tribe and adopted by the District Court would provide this tribe a uniquely unfettered ability to acquire new trust lands without geographic or functional limitation and without any oversight by the Interior Department, all absent any indication by Congress that it intended this truly anomalous result. Is this, you refer to it being other tribes or is this a unique statute? There is similar language in Section 107 of the Michigan Indian Land Claims Settlement Act with regard to a different tribe. Interior has interpreted that language in the same way. Has any court interpreted it at all? A District Court did interpret that language and reached the same conclusion that the District Court did in this case. However, that decision was later vacated. Later vacated, thank you. Yes. And Interior, part of the reason that Interior reached the conclusion that it did in this case about the meaning of the word enhancement was because it had already reached a conclusion about the meaning of enhancement with regard to Section 107 and a different tribe's request. So, starting with Section 108. Sorry, while you're discussing the two different provisions, can you tell me what is the difference between, if there is any, between tribal land holdings and tribal lands and also the term land held as Indian lands are held? Are those distinct terms or do they have the same meaning? I'm wondering what your understanding is of that. Well, I'm not sure that the Secretary reached a definitive decision in this case about the precise meaning of the word, the words tribal lands, because the Secretary had concluded that the tribe hadn't shown that it met sort of the enhancement requirement generally. It's not entirely clear whether land, tribal lands and tribal land holdings mean something different. I think they probably mean the same thing, meaning the... Doesn't the Secretary have to have an understanding of what tribal lands means in order to determine whether they were enhanced? I'm not sure how that question could be left open. Well, the tribe here was arguing that, sort of interpreting enhancement in two ways. The primary way that we're talking about here in this appeal, of course, is they had sort of a quantitative interpretation of that term. But the tribe did also try to argue that this acquisition would enhance its sort of lands generally, including land that it owns in fee. I mean, I believe that I'm correct that the Secretary didn't reach a final decision on this, but it does seem implicit in the Secretary's interpretation that tribal lands means trust lands and the trust lands... Does tribal land holdings in 107 also mean trust lands? I'm not sure, Your Honor. I'm sorry. I'm just not that familiar with Section 107 and how... The Secretary is relying on its earlier interpretation of 107 and saying that a similar interpretation should apply to Section 108. Isn't that correct? Yes, but that... I mean, primarily what we're talking about is the meaning of the word enhancement and whether enhancement means just any increase in acreage or whether it means you are doing something that improves the value or the functioning or the quality of the existing lands. I think it actually makes actually some difference, though, given how the provisions read together. Because if tribal lands only means lands held in trust, that may affect how we interact between 108F and 108C5. I guess there's another part of this, which is that there is still pending before the District Court, or there would be if you agreed with the Interior Department here, the question whether the tribe has shown that what they have done here, this acquisition would be an enhancement of tribal lands. And it may be that the right time to answer that question would be on remand when the District Court can assess whether the Interior Department correctly determined that this acquisition did not enhance tribal lands, whatever that means. And what about land held as Indian lands are held? What about that term? Is that equivalent to either trust Indian lands or Indian land holdings? I did some separate research and I couldn't really find any definitive understanding of how these terms interact. So I'm just wondering how the government understands it. My memory is that in the Bay Mills Secretary's opinion, it walks through what that phrase means. That opinion is in the appendix in full and concludes that it doesn't mean anything in particular. Your research did not lead you astray. It's not a defined term and it can mean sort of a variety of different things. So in other words, Interior determined that in the Bay Mills section of MILXA, Section 107, that held as Indian lands was not a mandatory landage trust provision. We do, of course, agree here that Section 108F is a mandatory landage trust provision if conditions are met. And what this case is about is what are the conditions that trigger that duty? We argue, of course, that the term enhancement, the plain meaning, the ordinary usage of that word has a sense that relates to the value or the function of something, the attractiveness, the all qualitative meanings of that term enhancement. And that the district court erred here by agreeing with the tribe that it could have this quantitative meaning that is really outside ordinary usage of the word enhancement. For us, what our tribal lands, I hadn't thought of this till this morning, so I hadn't looked back myself, but is there similar language in the Major Crimes Act of 1888 that gives criminal jurisdiction to the tribes on the reservations? Does that use tribal lands, do you know? What I'm wondering is if there's a parallel interpretation of that anywhere. I don't know, Your Honor. I should know, but I don't, so excuse me. So one of the reasons that we think enhancement must have this more limited sense is because Congress's decision to write this provision in Section C indicates an intent to provide a limit. If Congress intended any acquisition to qualify as an enhancement, it seems Congress should have chosen a word that means acquisition, and Congress didn't. They paired enhancement with the word consolidation, which also- They wouldn't need this at all. I mean, they wouldn't need any word at all unless it's words of limitation. Would that not be your position, that the very fact that they use those words by itself indicates they intended a limitation? That's right. That's right. And I know my time is running very short, so very quickly on Section 108F, our position is that the reference in Section 108F to lands acquired using interest or fund and that, of course, the United States, when taking the affirmative act to take land into trust to fundamentally alter the relationships between the tribe, the state, and the United States with regards to that land, of course the United States may verify that the minimum standards in the statute have been met before doing so. Taking land into trust has significant consequences. The United States takes title. It takes on all kinds of responsibilities about approving uses of that land. The land, of course, then is pulled from state jurisdiction with regulatory consequences. And as relevant here, it becomes eligible to have a casino on it. That's right. And of course, that's what this case is all about. So we do not think that this is not something that Congress would have taken lightly and just assumed that Interior would not be able to verify that the requirements of this statute were met before taking that discrete government action. Ms. Prince, did Interior... Interior's decision doesn't seem to reference the compact that the tribe has with Michigan. I mean, ordinarily, would the Department of Interior need to read the statute also to be consistent with the compact? Since those are both laws that the Department of Interior is charged with enforcing? Well, I don't believe the Department of Interior directly enforces the compact. The compact is essentially a contract between tribes and the state. The Interior Department's opinion does... It's approved by Congress. I mean, the tribal state compacts must be approved by Congress. So they're not statutes, but they are... I mean, I don't know. What status do they have? Do they have the same status as other federal laws or treaties? You know, I don't know. I mean, you're correct that that's not what Interior relied on here. Interior did reference, I believe, IGRA, and that was part of the backdrop for interpreting this statute. Obviously, Congress would have known at the time it wrote this statute that lands that were taken into trust could be gaming eligible, and that IGRA establishes sort of a default, no gaming on later acquired lands, with some narrow exceptions. So, you know, that does sort of form part of the backdrop. And I think that also heightens the sort of slippery slope that all of the appellants have talked about in their briefing here, is that if this is interpreted, this statute is interpreted to provide really no limits on what lands this tribe could acquire and what lands it could then force Interior to just blindly take into trust, those lands could be anywhere. I mean, not just downstate in Michigan, but, you know, across the country and Manhattan. Why not? There would be really nothing, there would be no limiting principle to stop that from happening. And as I mentioned, to fundamentally change the way that land functions. So we, you know, we think it will be very strange for Congress to have written a statute with that effect, where there's really no indication by Congress that it thought it was doing so. That would be, as far as we can tell, really unique in the universe of statutes like this. It would really give this tribe unfettered land acquisition ability, unlike any tribe has. And we just don't think that the reading, the text of the statute and the context in which it comes can support a reading as extreme as that. All right, unless my colleagues have further questions, and we'll give you some time and reply, we'll hear from Mr. Shah. Thank you, Your Honor. May it please the court, Pratik Shah for the non-federal appellants. Maybe I should start by offering a few thoughts, Judge Rao, on your question about the possible distinction between tribal lands and tribal land holdings. The casino reply brief on page four and five kind of goes into this, just as a reference guide. But here, we believe that tribal lands is a narrower term and that tribal lands is a term of jurisdiction is exclusive. And so that, in our view, underscores the Interior Department's reading. Perhaps you would reach the same reading if you use the broader term, tribal land holdings, which would occur anything they hold title in. But certainly, if you're talking about consolidate or enhance tribal lands, then you are talking about the tribe's trust lands. That's a term of art. And so Congress had in mind something very specific. It didn't have in mind a right to acquire any lands that would simply add to the sum total of the tribe's land holdings. It had in mind a particular phrase, consolidate or enhance tribal lands. That is, the acquisition has to either consolidate, which is a strict geographic limitation, bring together, or it has to enhance the value of, improve the existing value of, the trust lands. What they would be acquiring are not automatically trust lands. So we think that that distinction that Congress used there actually underscores our reading. Now, of course, Your Honor, we don't think- Is it your position that they do not become tribal lands until the government takes them into trust? Correct, Your Honor. So you can't enhance something, you can't enhance a tribal land because that hasn't already been taken into trust? That's right, Your Honor. And we don't understand anyone disputing. In fact, the Sioux filed an application to have the lands taken into trust, and that's why we're all here. The other point I would make on 108C5 is I don't think you even need to think, you don't even need to resolve that, although we think it cuts in our favor. Because Congress, this is not the first time Congress has used the terms enhance or consolidate when it's talking about lands, or in fact, the term acquisition. And on the casino opening brief at pages 10 and 11, they're cited a number of statutes and regulations that use those terms. And in particular, I would point you on page 11 to 16 U.S.C. 1456-1F4C. I know that's a mouthful, but it's reprinted there on page 11. And I think that's a good example because what that does, that was a land management statute, land conservation statute. It referred to, quote, costs associated with land acquisition and enhancement. So here you have Congress using these words. If enhancement means acquisition, period, then that means acquisition in that statute is entirely superfluous. Just one moment. What was that reference again where you had acquisition and enhancement? Yes. So it's reproduced on page 11 of the casino opening brief. And the statutory site, Your Honor, is 16 U.S.C. 1456-1F4C. And that's a land conservation statute. And it uses the terms acquisition and enhancement. That's not the only statute. There are others cited there. And other regulations that Interior has used in the same way. And so it would render the term enhancement in that statute entirely superfluous, which means consistent with ordinary usage, enhancement cannot possibly include any and all acquisitions. And, of course, in this particular statute- Mr. Shaw, I have a question for you about that argument. Because the Michigan Act here is not codified, right? So this is the kind of, you know, there are a number of public laws that are not codified. So the Michigan Act does not appear in the U.S. Code. And I'm wondering with statutes that are not codified, whether that means that we can't apply a whole code presumption, right? Because there's a presumption that Congress legislates terms in a similar way. Should we read acts that are not codified to be consistent with other codified statutes? Does it make a difference? Oh, absolutely. I don't think it makes a difference at all, Your Honor. These are acts that Congress passes. They pass them all in the same way. The fact whether they're later codified or not, I mean, that's a formatting, almost a formatting thing, right? They don't control the codification. There's codifiers who do that. So I think when Congress uses statutes, you apply all the normal canons of statutory construction. You assume they knew pre-existing statutes. You assume they use the words in the same way. And you assume they use words with their established meaning. And so I think 108C-5, in our view, should not even be a close call. That it provides a limit. It doesn't give a license to acquire any and all acquisitions that increase acreage. Our position isn't that no acquisitions are on the table. It just has to be a subset of those acquisitions. If I can turn briefly, I know my time is running. But on 108F, because I think it's critical, I think it's important to start from the common ground on 108. Everyone here agrees that there are certain preconditions that have to be satisfied before the mandatory trust duty kicks in. Everyone agrees, for example, that the land has to be acquired with fund income. That's explicit in the statute. Everyone agrees that Interior has the authority to do a title check. Make sure that the tribe has clear and valid title. That's not in the statute. That's an implicit precondition. The only question here is whether, as another precondition, Interior can act consistent with the government's fundamental duty to avoid becoming a party to illegality. Particularly when taking on affirmative sovereign obligations of a trustee. Nothing in Section 108 strips that basic authority. And that makes particular sense here. The United States should not be compelled to take on the burdens of trust obligations for lands beyond those that Congress carefully delimited in Section 108C5. It just wouldn't make sense to think that Congress thought that US has to assume the significant burdens of trust obligations if the tribe is acting entirely outside of the lands that it authorized to be taken into trust. The last point I'll make is a textual structural one, and it goes to Section E2, the immediately preceding section before 108F in the statute. The district court seems to think that that provision supports its reading, but it actually cuts exactly the opposite way. In Section E2, the immediately preceding section, Congress drew a clear line. It precludes Interior's review. It says Interior hands off when you're talking about the spending or management of the tribe's fund. And that makes sense because Congress made the tribe the trustee of that fund. Tribe's money, tribe, you're the trustee, the tribe's board is the trustee of that. And so E2 says, Interior, you can't second-guess that. But significantly, E2 says nothing about the Interior's own compliance duty with respect to its own sovereign act of taking land into trust in Section F, which comes after E2. And that distinction, clear in the text of the statute, text and structure of the statute, makes sense. You have different trustees. The tribe's board is the trustee for the spending of the fund income. The United States is the trustee for lands taken into trust. You have an affirmative obligation on the behalf of the tribe with respect to spending and management. Makes sense that they have authority in that area. But it's the United States' affirmative trust obligations when it comes to land taking into trust, criminal prosecutorial jurisdiction, mineral resource jurisdiction, environmental cleanup, all of those things, and, of course, the background principles that we've talked about. I know, Your Honor— Mr. Shah, Mr. Shah, so the district court thought that the Supreme Court's opinion in Chickarilla Apache Nation supported its reading. And I'm wondering whether you think that that case supports your reading of the statute. Your Honor, yeah, Hickory Apache Nation strongly— Hickory Apache, sorry. Sure, I happen to argue that case, so that's why I have the pronunciation. That case, the district court was wrong. That case involved—the district court read it for the categorical proposition that all trust duties must be explicitly enumerated in statute. Otherwise, they can't be enforceable. In Hickory, what was at issue was an exception to the attorney-client privilege. And what the Supreme Court said there is, when the United States is acting as trustee, there are certain occasions in which the United States' role is different than a private trustee. And that was a great example of one, because a private trustee, you can imagine, when it's invoking the attorney-client privilege, a private trustee is only acting on behalf of its beneficiary. So there isn't a good reason to allow exercise of the attorney-client privilege to shield the beneficiary. But with the United States, it is not simply acting only blindly for the beneficiary. It has a lot of different interests. And so that exception to the attorney-client privilege, the Supreme Court held shouldn't apply. You would have expected Congress to make it explicit. Here, that reasoning in Hickory-Apache Nation cuts exactly the opposite way. Because like a private trustee, the United States has an interest in avoiding becoming a participant in illegality. And in fact, the United States has a greater interest as a sovereign in making sure that it's not running afoul of any federal law. So the reasoning in Hickory-Apache Nation, I think the district court's reading was superficial. If you look at the reasoning, it strongly supports that you would be applying that fundamental duty here of any trustee, which applies in spades when the sovereign is acting as a trustee in this capacity. Mr. Shah, let me ask you one question about 108E2. Maybe I missed it, but you skipped over notwithstanding any other provision of law. Sure, Your Honor. And look, we don't dispute that. Notwithstanding any other provision of law, Interior cannot do the things stated in E2. That is, cannot second guess how the tribe spends the money, distributes the money from its fund, administers its fund. And all of that makes sense because the scheme that Congress set up was that the tribe would be the trustee of this fund, and it gets to monitor and makes the decisions how to spend it. But that's in contradistinction to F. That's when the United States comes into the picture. The tribe can spend the money and acquire any land at once. Interior isn't stopping that. What Interior is saying, before we put the government's imprimatur on that and take on the significant trust obligations, we at least have our basic duty to make sure that that land was acquired lawfully. So that's our reading of how E2 fits with F, Your Honor. All right, if my colleagues have no other questions, we'll hear from Ms. Spinelli. Thank you, Your Honor. Thank you, Danielle Spinelli for the Sault Ste. Marie tribe. The District Court correctly held that Interior committed two fundamental errors here, each of which independently invalidates its order. First, Congress didn't give Interior the authority to override the tribe's determination that its purchase was an enhancement of tribal lands. And second, even if Interior— It's not just the tribe's decision we're involved with. As the counsel argued before you pointed out, what we're reviewing is the decision of Interior as to whether to land into trust. That's absolutely correct. We're not talking about overriding the decision of the tribal trustees to make an acquisition, but we are talking about whether the Secretary has the independent duty to comply with the law in making his or her decision. Well, let me go straight to that point. The statute makes it perfectly clear, I think, in multiple places that Congress was not giving Interior the authority at any time, including when it is reviewing a trust submission by the tribe to override the tribe's determination about whether a purchase enhances tribal lands. Well, why would the terms enhance or consolidate be in the statute unless their terms of limitation? Well, they are not terms that connote a geographic limitation of the type that Interior and intervenors— Why would they be in there at all unless their terms of limitation? They certainly limit within broad parameters what the tribe can do with its money, but I think it's critical— I don't believe they preclude particular land acquisitions. So why are they in there unless their terms of limitation, which would be a way of precluding the acquisition of things outside the grant? The terms are there because they limit what the tribe can do with the self-sufficiency fund. I don't believe they limit— They're there for limitation. And what is it that you would say they exclude here as far as acquisition of land? I don't believe they do exclude— You don't believe that they have any application to land holding transactions, and yet that's where they are in the statute. Let me explain. Let me explain, Judge Sentel. Please. First, there are two questions here. First, we think the statute makes very clear that Interior does not have the authority to interpret that language. The board has the authority to determine whether or not a purchase consolidates or enhances tribal lands, and that is clear not only from Section A.2, which appoints the board as the trustee of the self-sufficiency fund with the power to administer the fund, but also from the provision that you were just discussing with my friend Mr. Shaw, E.2, which says, notwithstanding any other provision of law, the approval of the secretary for any payment or distribution from the principal or income of the self-sufficiency fund shall not be required. And I apologize. The language of the statute is in the addendum to the tribe's brief, and I'm right now looking at page 8-4. And the secretary shall have no trust responsibility for the expenditure of the principal or income of the fund. Now, before we ever get to what does consolidation and enhancement mean, we have to reach the conclusion that the statute gives Interior the power to make that determination. One thing we know, one thing that's axiomatic... Your friend Mr. Shaw pointed out that that does have the language in it that you just read. It does not say anything about the decision as whether or not to take the land into trust. Well, if we look at F, which is the provision... So the way I think we need to understand 108 in its totality, all the provisions of 108 lead to the same conclusion, which that is, this is the tribe's plan for how to expend the settlement money that belongs to the tribe, that the tribe received as compensation for the unlawful taking of its lands. And that brings us to the Indian canon, where we do defer to the interpretation by tribes of statutes for their benefit. That's correct. Nonetheless, that canon does not say the difference extends to rewriting a statute. Absolutely not. It seems to be at least a reasonable position to say the tribe is writing that so that that interpretation will no longer be entitled to difference. Let me say something about consolidation and enhancement then. I do think there are two separate questions here, and that the court doesn't need to get to what consolidation and enhancement means if it agrees with our fundamental position, which was adopted by the district court, that interior doesn't get to decide that. The only role that interior is given in this statute is in 108F, and that is a mandatory duty to take into trust any lands acquired using amounts from interest or other income of the self-sufficiency fund. It has to take into trust any land purchased with interest. That is the only role that interior is given. Doesn't that provision, it is any lands, but it has to be lands acquired using amounts from interest or other income of the fund. That's the only way to acquire land using interest or income from the fund is for the consolidation or enhancement of tribal lands. Isn't that implicitly part of- No, not at all, Judge Rao. You know, again, the agencies, in order to have the authority it's claiming, the agency has to have some statutory grant of authority. And sure, yes, it can be implicit. But if one looks at the rest of this statute, including E, I think it's very clear that it's not. So I think the distinction- Then what about the government's sovereign obligation to ensure that it properly enforces the law? With respect, Judge Rao, I think that way of putting it by interior and the intervenors just begs the question of who gets to decide whether something consolidates or enhances tribal lands. Our position is that if the board has made a good faith determination, as it did here, no one is disputing that this purchase enhances tribal lands because it increases the total amount of land. So under your interpretation, if this land, instead of being near Detroit, was near Milwaukee, they could still take it in and still buy it, and the secretary would have to take it in trust. Is that correct? Our position is that the tribe gets to decide. No, answer that question. And so- Answer that question. You would say they could buy land near Milwaukee, and the secretary would still have to take it in trust, right? Yes, our position is- Suppose it was near Los Angeles. Could they try to buy some out there near Los Angeles to put a casino on, and the secretary would have to take it in trust. Our position is that the statute doesn't contain a geographic limitation. If it did, it certainly doesn't contain- Essentially written out of the statute. No, Judge Centel, let me respond directly to that. Enhancement is a broader word than acquisition. It is, and we therefore have to interpret what it means in this usage. Correct. It is a broader word. Lots of words in there are broader words that can mean lots of things in different uses, but it can be, it would seem, interpreted as the secretary does, that it has to be, if you're enhancing existing land, it has to be land in relationship to that land. Is that not a possible interpretation? I don't believe it's a reasonable interpretation. Is it not a possible interpretation? Perhaps it's a possible interpretation. I don't believe it's a reasonable interpretation, and it's certainly not one that could overcome the Indian canon, which requires statutes to be read if they are ambiguous, as the tribe would have them read, and this statute is- Isn't that canon also subject to the limitation that it has to be consistent with the language of the statute? Certainly. Certainly, Judge Centel, but- They're not saying that we do away with the Indian canon. They're just saying that applying it here, it doesn't work because it doesn't control, excuse me, it does work, it doesn't control because we have to look at the language of the statute first. Well, I think there's no, I really, really think that there is no possible argument that the statute unambiguously requires a geographic limitation. It unambiguously requires a limitation. Then the question becomes whether it's consistent with that limitation. So, Judge Centel, I think the limitation- What does it mean if it doesn't mean some kind of geographic relationship? That's what I'm trying to ask you when I ask you about Milwaukee and Los Angeles. What does that mean, the limitation to enhancement and consolidation, unless it has a reference to the existing lands? I think as both district courts that have looked at this issue have found, enhancement simply means to increase. It can mean increasing any number of qualities. If that's what you mean here, then there's no limitation created by the term enhancement because the very fact of acquisition would cover the increase in holding. It's got to mean something more in there. Congress wouldn't have put it in there unless it means something more than simply echoing the fact of acquisition. Respectfully, Judge Centel, we disagree. I mean, we think that enhancement can mean either purchasing land that enhances the tribe's overall possessions of land. So, there's no limitation at all created by enhancement. Correct. There's no geographic limitation. There's no reason why Congress put it in there. Congress used the phrase consolidation or enhancement rather than acquisition because it's broader. Enhancement allows the tribe to improve its existing lands. And in another context, perhaps, you know, that would be the only thing enhancement means is improvement. In this context, we know that that's not all it means, but we know that it includes acquisitions of land. Both interior and intervenors have conceded that and they have to because F provides for taking such land into trust. Ms. Spinelli, isn't enhancement in the context, so the dictionary meanings of enhanced that you cite are broad. They can be quantitative or qualitative. But when we talk about the enhancement of land specifically, which is what we have in this statute, the enhancement of land isn't enhanced much more akin to what you just said, which is an improvement. I don't think anyone would say an improvement of land would include acquiring more land, right? Improvement in land means some type of development of attractive land. So two things, Judge Rao. First of all, what we're talking about here is not enhancement of land. It's enhancement of tribal lands. And I think that goes to the discussion that you are having with Ms. Kranz about what is the meaning of tribal lands. The way interior reads it is that it has to be a specific parcel of land already owned by the tribe. But that is not what lands means. Lands means, according to the OED, territorial possessions. Well, but that's not, I mean, what does tribal lands mean? I mean, Judge Sentelle mentioned the Major Crimes Act. I believe there, tribal lands means lands held in trust. Well, no, actually. So just to talk about that, I mean, the Major Crimes Act uses the term Indian country. And Indian country is defined to mean lands within the limits of any Indian reservation, which include fee lands. It's not just trust lands. It includes dependent Indian communities, and it includes Indian allotments. It's a very broad term. And so is tribal lands distinct from Indian country, in your view? I actually think tribal lands in this context means all the lands owned by the tribe. And that's consistent with the phrase you pointed to, with Interior's interpretation of the phrase you pointed to, which is held as tribal lands are held. As Ms. Kranz said, Interior interpreted that in the Benny Mills decision, essentially to mean those lands have no special status at all. We're not saying we agree with that. But Interior's reasoning was tribes can have lands in any number of ways. They can be reservation lands. They can be trust lands. They can be restricted fee lands. They can be held in fee simple, according to Interior. In your view, tribal lands, tribal land holdings, and lands held as Indian lands are held are equivalent terms? I believe tribal lands and tribal land holdings are synonymous, as Interior conceded earlier. There is, in fact, one definition of tribal lands, which is from the Collins English Dictionary, is holdings in land. The point is simply that it's referring to the collective. It's not referring to specific parcels the tribe already owns on the upper peninsula. It's referring to the tribe's lands collectively. That makes sense because this statute was intended to allow the tribe to make a plan for the use of money that was given to it in compensation for the lands that were unlawfully taken away from it, which were in both the upper and lower peninsulas of Michigan. A third of the tribe's population is in the lower peninsula of Michigan. And right now, the tribe has no lands in the lower peninsula to serve the needs of its members there. Congress would have known that. And I actually think the use of the phrase tribal lands strongly supports our reading. A tribe's collective lands are much more than just the specific parcels that it already owns, especially in this context. They determine the extent to which the tribe can exercise its sovereignty and achieve self-sufficiency by pursuing economic development and providing jobs and other benefits to its members. So it may- That's also interesting because, I mean, is there any part of 108C that suggests fund income can be used for economic development? I mean, C4 talks about educational, social welfare, health, cultural, or charitable purposes. Whereas under 108B, it does talk about economic development where you can use the principle of the fund. Right. I actually believe C is much broader than B. B- With respect to economic development? I mean, B specifically refers to economic development where I don't- Is there any language in C that you would read to include economic development? I mean, I think that four or five could potentially include economic development because that's one of the main purposes of acquiring tribal land is in order to use it for economic development. And C- It doesn't say that in the statute. It doesn't say that in C. It says it in B, and I think, you know, I think- Well, but that's interesting, right? Because Congress specifically provided that principle from the fund could be used for economic development. And then in C, they talk about a list of quite specific things that might be used for by the interest or income from the fund, none of which, at least to my reading, indicate economic development. I think economic development is absolutely a possible use for interest. I mean, I think if you look at principle and interest, it's very clear that principle can be used more narrowly than interest. So the restriction on principle is that it has to be used for investments that the board determines are reasonably related to economic development, development of tribal resources are otherwise financially beneficial or will consolidate or enhance tribal land holdings. They're restricted to economic use because Congress and the tribe itself, which developed this plan in conjunction with Congress, wanted to ensure that the principle wasn't wasted. So that's why, for instance, you know, use principle to make per capita payments. Then if you look at C, C says you can use interest to make per capita payments. But uses of interest are broader than the uses of principle. I'm not sure if I agree with that, to be honest. I mean, be, you know, economic development beneficial to the tribe reasonably related to that. I mean, that is a very broad term. Whereas under C, I mean, it's quite specific. Addition to the principle as a dividend to tribal members, a per capita payment. And then it lists a closed set of educational, social welfare, et cetera, reasons. So I'm not sure that B is broader than C. Okay, well, in a way, it doesn't matter. The question is, first of all, does interior get to decide what consolidation or enhancement means? Not just get to, but have to. They have to determine they're lawfully taking into trust. Judge Sentelle, I would say this question of whether it's this argument that interior is somehow being forced to do something illegal by complying with the plain language of subsection F really, really just begs the question. It is not unlawful for interior to do what the statute tells it to do. You're coming to the question. Yes. It is necessary to determine whether it's lawful in order to determine whether they're performing their duties. Not just are they authorized to, but one would assume they are required to be convinced that they're doing something lawful. The Indian canon does not permit the Indian tribe to rewrite the law. That's absolutely true. We have to defer to reasonable interpretations by the tribes of the law, but that doesn't mean that the tribe can dictate an understanding of the law that differs from what we believe the language plainly means. That's absolutely correct, Judge Sentelle. If I could just go back quickly to subsection F, that is the source of interior's authority here. I think everyone agrees. So 108F says, any lands acquired using amounts from interest or other income shall be held in trust by the secretary for the benefit of the tribe. Right next to that is a provision that says, notwithstanding any other provision of law, the approval of the secretary for any payment or distribution from the principal or income shall not be required. And the question is, notwithstanding, I mean, we have E, which makes it very clear that the secretary does not get to decide, does not get to approve or disapprove expenditures, but by saying... E2 also says, right, that the secretary shall have no trust responsibility for the investment administration. Right. So, but then F establishes that it does have a trust responsibility over land. So I think it's consistent to say the tribe can acquire lands for consolidation or enhancement. And it gets, you know, broad deference over what that means in terms of using its interest. But then, you know, but then the secretary, you know, has an obligation. It has a trust obligation with respect to lands that it, you know, that it takes into trust. Judge Rao, the problem with that is that there really is, there is no distinction between approving or disapproving expenditures and deciding that in the context of taking land into trust, that that land was acquired unlawfully. That's what Interior has said. This land was acquired unlawfully. We're interpreting a statute here. The statute says consolidation or enhancing tribal lands. That has to have a single meaning. It can't change meanings depending on whether the board is determining whether to make an expenditure or Interior is deciding whether to take the land into trust. So if Interior is permitted when taking the land into trust to decide, no, the board was wrong. This does not consolidate or enhance tribal lands. That acquisition was unlawful. Then the board is bound by that going forward. How would the government, though, put its imprimatur on something that it thought was unlawful, right? How could we expect the Department of Interior to do that? You know, for instance, Mr. Shah, you know, says it's implicit that, you know, that they have a valid title, right? That's not mentioned in F, right? But so what if they determined that the tribe did not have valid title to land? If that would still be forced to take it into trust? No, I'd say so. No, and that is in F. If the tribe does not have valid title, there is no way the United States can take title from the tribe and hold it in trust for the tribe's benefit. That is inherent in what it means to take land into trust for the benefit of the tribe. And that is within the language of the statute. But there's nothing at all inconsistent with having, there's nothing at all strange about having a statute that says the secretary shall take land into trust without letting the secretary go back and determine for itself whether the board was correct that taking this land into trust served the purpose that the board itself set out in the plan that it developed for the use of its settlement money. What about this language from Hikarilla Apache Nation, right? I mean, so there the court says that in fulfilling its statutory duties, the government acts not as a private trustee, but pursuant to its sovereign interest in the execution of federal law, right? So here it is also acting in the sovereign interest in the execution of federal law. I mean, can we really read out that obligation of the federal government? No, not at all. Again, I really think this begs the question of whether Interior gets to decide whether something is a consolidation or enhancement of tribal lands. Nothing in the statute requires or even permits Interior to decide that question. Interior would not be doing anything unlawful by taking this land into trust, which the board has decided benefits the tribe by increasing its total lands, by enhancing its tribal lands for the benefit of its members, which right now have no lands to meet their needs in that area. Ms. Pinelli, let me ask you, I read 108C-5 very simply. We were talking earlier about geographic limitations. That's consolidation. You can't consolidate lands that are non-contiguous so that if this tribe bought lands in the Upper Peninsula, they'd probably be contiguous and be consolidated. On the other hand, if they buy land in the Lower Peninsula, which is not consolidated and not considered consolidation, they would be enhancing, that is, increasing the worth. To me, enhancement means worth very simply. And when Judge Rao said, where is there any authority to economically improve under this statute, I think that comes from enhancement. Agreed. Increasing the worth. So my question is this, which I don't think goes beyond this case, and that is, if you're right that Interior has no business second-guessing the tribe in the purchase of land that either consolidates or enhances, who does have the authority to challenge that? Would members of the tribe have the authority? Judge Sintel was talking about buying land in Los Angeles and so forth. I came up with, what if they decided they wanted to buy an island in the South Pacific? Would anybody have the authority to challenge that? Tribal members, I believe, could challenge it. So for one thing, there's a provision in the tribe's constitution which allows tribal members, by referendum, to undo any resolution of the board. So if tribal members believed that this use of the self-sufficiency fund did not, in fact, enhance tribal lands, then they could undo that. So the point, I think, is that, as the district court said, this is not a regulatory scheme where Interior gets to oversee the tribe's use of its own money. It's a restitutionary scheme. And these limitations in B and C are both created by, administered by, and are for the tribe's benefit. So yes, the tribal members certainly could. Okay, all right, fine. Let me ask if my colleagues have any other questions. Okay, then let's see. Mr. Shah, I know you waived your right to reply, or your minutes. Ms. Kranz, why don't you take two minutes? Sure. We've covered a lot of ground here, but I think what we've heard is a concession that under the tribe's reading of the phrase enhancement of tribal lands, there really is no limitation to what they could acquire. Judge Rao, I know we haven't briefed here the meaning of the phrase tribal lands, but I want to offer a thought, which is if tribal lands means just any land the tribe owns in fee, what would there be to stop the tribe from acquiring fee lands, just anywhere they like, and then trying to use fund interest to acquire other nearby lands and try to make the geographic argument that, oh, we're now enhancing these fee lands we acquired in Southern California. Again, we haven't briefed it, but I do think there's the potential of a really expansive reading of tribal lands to also eviscerate the limitation that Congress clearly intended in this statute. But nothing would stop Congress from amending the statute if that happened. I suppose that's true. I think... Well, of course it's true. Right. It'll be politically difficult, I'm sure. But no other statute has been read to give a tribe the kind of sweeping trust land acquisition authority that this tribe is claiming here. The tribe's view that Interior can't even ensure that the most basic requirements in the statute have been met really, I mean, essentially undermines the United States status as the ultimate sovereign over lands and the trustee over trust lands in particular. I see my time is evaporating quickly here. We think Interior has the best reading of both of these provisions. Clearly, it has the authority which the tribe invoked to ensure that the conditions in this statute have been met before taking land into trust. And Interior has a reading of the word enhancement that both respects Congress's manifest intent to provide a limitation and extends from the ordinary usage of the word enhancement. Thank you. All right. If my colleagues have no further questions, then thank you, counsel.
judges: Henderson, Rao, Sentelle